which is Praetorian Insurance Company v. Axia Contracting, case 19-1113. Mr. Wilkinson, we're ready to hear you. Good morning, your honors. May it please the court. My name is Scott Wilkinson and I represent the appellants Axia and Blackhawk. We're here today because in the case below the district court declined to rule on the specific policy construction issues that were raised by the parties and formed the basis for Praetorian's denial of Axia's claim under the policy. Instead, what the district court did when briefing was completed, it came up with its own concept, material breach, and then employed that concept in order to dismiss Axia and Praetorian's claims. The district court did so in a manner in which its order violates all manner of controlling law. It expands the concept of material breach beyond anything that we can find in existing precedent. And as a result, the order must be reversed and remanded. Now, in my conversation today, I'm going to focus on three general areas. Which is your strongest argument? The public service company, V. Wallace? Well, your honor, I think the strongest argument is, and I'm sorry, I kind of work, my brain works in conceptuals instead of the exact, the exact language. The strongest argument is that this, this interpretation of material breach comes out and ignores the agreement of the parties, right? And that's, that's not an insurance policy specific argument. That is a policy that, an argument that's specific to all interpretive principles. In this case, we have a protective devices endorsement and a protective devices schedule. The endorsement serves the purpose of two purposes. Like anything you do, if you want to punish somebody for not doing something in a contract, you have to impose an obligation on them to do it. So the other conditions section of the protective devices endorsement says to Axia and Blackhawk, you have an obligation to maintain these protective devices or services, okay? The, excuse me, the conditions, or sorry, the perils excluded section then says, here's what you do if, or here's what happens if you don't maintain them. And now, we had a circumstance that there was a six foot chain link fence. Everybody agrees it's a theft protective device. There's a dispute over whether it's a fire protective device. The parties agreed in advance that there would not be a total forfeiture. And when I say parties agreed, that's kind of colloquial because there's no real party agreement. It's Praetorian's form. In advance, Praetorian drafted a form that says, if you do not do these things that we've told you to do in the protective devices schedule, you will lose either fire coverage or theft coverage or both as applicable. Nothing in the policy says you will lose all of your rights and obligations under the policy. And that's the biggest issue here. The district court's order imposing the doctrine of material breach says by definition, if you have of all further obligations under the policy. This is a builder's risk policy. It doesn't just cover fire and theft. It covers tornadoes. It covers all manner, and we listed them in our briefing, of other covered causes of losses. You read the district court order to say if a tornado hits and you don't have a fence, no coverage? Yes, by definition. That's the concept. That is the definition of material breach. If a material breach occurs, the non-breaching party has no further obligations under the contract. By definition, that's what it means, right? And so the biggest issue here is we have a court that has applied the doctrine of material breach to a circumstance where the parties already agreed that a lesser consequence would occur. We've been unable to find a single case in any Colorado jurisprudence, frankly, for that matter, the nation. And despite what effectively was an open invitation, Praetorian has not been able to and frankly, policy construction or otherwise, that applies the doctrine of material breach to a circumstance where the parties agreed in advance that a breach in question would have less than a total abdication of the responsibilities under the contract. Now, if we think about the interpretive principles behind the court's role in contract interpretation, that's not surprising. At its core, whether it's an insurance policy or whether it's an arm's length contract, every court's obligation is to enforce the clearly expressed intentions of the parties. When the parties have already said, if you breach this contract in this way, you are not going to lose all of the benefit of the contract. You're going to lose a subset of the benefit of the contract. By definition, their contract has made it impossible for that particular breach to be material, because they have already agreed that it will not fully relieve them of their obligations. So that, we think, is our strongest argument, because that is the argument that has absolutely, from our perspective, no support in case law. Can I ask you, because so much comes down to this protective devices endorsement, and I'm trying to understand it, it begins, if indicated on the protective devices schedule, which have that, the following conditions apply to the locations described on the schedule, and then there's nothing. What am I to make of that? You're to make that this is a typical insurance policy. So do we just disregard that language? No. Effectively, the way you would read this, and this is the, again, we go back to insurance policy construction principles. How would a person of ordinary intelligence and understanding review this insurance policy? The other conditions section says, you have to maintain these devices on this schedule. I'm not there yet. I'm to the following conditions, and I see below that as other conditions, but before we get to other conditions, are there any following conditions, or there just aren't any? The following conditions are the other conditions. That's just the way it's written. There's no space in the form. This is a standard form that Praetorian uses. That answers it. Thank you. Yes. So, again, we get, going a little broader picture, we talked about the biggest army, and here's the broad picture as we're looking at it. If we're going to apply the correct policy interpretive principles, and we've laid these out extensively in our briefs, and conceptually, the key point is, if you're interpreting an insurance policy, there are key and critical distinctions between insurance policy interpretation and standard arms link contract interpretation. We know the district court didn't adhere to those distinctions. The district court, in its order, specifically says, and ambiguity is a good biggest difference between the two. The district court, in its order, specifically says, our role in the event of an ambiguity is to try to ascertain the intent of the parties that enforce that, and it cites the Gustafson case. That's not what Gustafson says. If you read the Gustafson case, it specifically says that when interpreting an insurance policy, the role of the court, if an ambiguity exists, is to construe the ambiguity against the drafter and in favor of coverage. What would be wrong with this interpretation? Obviously, this protective devices endorsement concerns fire and theft, and so we limit other conditions to that. We say protective devices, you have to have a fence, that makes sense, and you can't come in and say, well, we had a fence that had holes in it or something, and so just being able to say we had a fence doesn't get you coverage, but you can still lose based on these perils excluded. You didn't maintain the fence. Kids were getting in and out, so forth and so on. Why is that not the most natural reading of this language? So if we look at the language that was used by the district court in its attempt, and clearly the district court and Praetorian both understand that a risk in the interpretation that the district court adopted is that you have rendered the perils excluded section of the protective devices endorsement illusory, and they both try to get around it in varying ways, and if you look at their language, what you see is an inability to acknowledge the full language of the policy. The district court starts and tries to characterize the other conditions section as an obligation to erect a fence. That's not what the policy says. The policy uses the word maintain. Maintain can include erect, though. Maintain can include erect. That's absolutely correct, but maintain goes beyond erect. And that's the peril excluded part. Well, and so that's the point. So here's the point. You have to read the entirety. So the other condition says maintain, but then go read the conditions themselves. Requires you to maintain a fence that completely surrounds the entire project with locking gates. Now, the argument is if you have a fence and there's a hole or two or a section blows down, well, that's an obligation to keep it in good order. That's not an obligation to maintain. No, if you have a fence that completely surrounds the project, it completely surrounds the project. There's no holes in the fence. The purpose of a fence is to not have a hole, right? So you literally cannot comply. If you comply with the other conditions portion, there has to be a fence that completely surrounds the project. There's no partial compliance there. There's no shades of gray. And if it's material breach by failing to do that, then what is the purpose of the perils excluded section? The perils excluded section talks about if you fail to maintain in good working order one of the devices or services. Well, if you fail to maintain it in good working order and the requirement is to completely enclose the project, then you fail to maintain the fence. Period. End of story. And those two issues go hand in hand. Well, completely enclosing could mean you can't do it on three sides. That kind of a fence is not going to count. But if you do it on four sides and somebody comes along and cuts the wire and you know about that or you don't know about that for a week and then in comes the arsonist, I don't know that you would say that the fence doesn't completely enclose it. What you have is a fence that completely encloses it that's not maintained and is available to arsonists. Well, and I think the key point in your question, Your Honor, is the fact that you said it's not maintained. And again, we go back to the common use of the word maintained and the other conditions section specifically says you are required to maintain at all times during the policy period the protective devices and services. Then we go into the protective devices and services. It says the site will be protected with chain link fencing or other similar security fencing at least six feet in height completely enclosing the entire job site. So if you have to explain the opinion or if you have to explain the distinction by saying, well, you put it up, but you didn't maintain it, then your exact explanation begs the point. You are saying you didn't maintain the fence, which goes right back to the situation, the parties. And keep in mind, we have to at one point take a step back. The policy construction principle we need to be operating under is if you show this to a person of ordinary intelligence on the street, how are they going to read this policy? And where I would ultimately come down is I don't think you can show this policy to a single person on the street who would come back and say, yeah, I read this policy and I understand that if I don't put a six foot chain link fence up, I don't have coverage for I think an average person could say, yes, I may lose coverage for theft if that is a theft protective device. I may lose coverage for fire if that is a fire protective device. Now, I can have a different interpretation, and the record suggests AXIA did. AXIA had locked containers on site to deal with theft, and there's an email in the record that says that AXIA had planned to construct a permanent fence when they had theft issues or when the progress proceeded to the second floor. So why not just put up the fence? Well, Your Honor, if they had clearly, and this is not the only protective devices endorsement they had seen, if they had worded this like other endorsements in the market that said if you do not put up a six foot chain link fence and have a locking gate, you will have no coverage, you can rest assured they would have put up the fence, right? There are logistical considerations that came with this site that made it difficult to fence in advance of doing the construction. They made a judgment call based on the language of this policy that said we don't have a substantial theft risk. To the extent that we have a theft risk, we're going to deal with it by locking the valuables in here. We're going to take the risk on the theft risk. That's fine. That's their call. But under the controlling policy construction principles, in order to take the risk, they had to clearly and unequivocally understand what their risk was. That's Praetorian's job. Praetorian, if they wanted to make sure that they had an ability to draw a boundary around their coverage and they thought a six foot chain link fence was a fire protective device, they had to clearly and unequivocally make sure AXIA understood that so they could comport their conduct with that understanding. Did you ask to reserve time? I would like to reserve a little bit of time, but I also... I'm going to be the one who I also want to make sure I answer the panel's questions. I do have a question and I would like you to answer now if you could. And that's on your other argument, which is essentially this whole idea of a material breach is an affirmative defense that was waived by Praetorian. Praetorian responds that, well, you essentially forfeited that issue by not raising it in your simultaneously filed briefs. The district court gave you the opportunity to file. Could you address that argument that you forfeited it? The argument that we forfeited, I guess I would ask the question of how are we supposed to understand that? There was not a single allegation in the record. And I know they've tried to equate the condition precedent to a material breach. They're completely different concepts. Assuming those are completely different concepts. Yeah. There's not a single thing in this record on which any factual allegations existed that would even raise a factual issue. We filed our brief before they did. And we were specifically told by the court, do not file anything else. We did what we were told. Our only option at that point was to file something which is either in the form of a motion to reconsider or going back and saying, look, we need new discovery. But the reality of the circumstance is the legal argument. You could have addressed it in your brief. You could have addressed it in your brief. I don't know how I'm supposed to address a factual issue in my brief. They never raised until they fired their affidavit. You don't necessarily know. I think your point is, although I wasn't clear from the brief, you don't necessarily know when you're filing these simultaneous briefs whether Praetorian is even going to pick up on this whole idea of a material breach the district court came up with, correct? You don't know how they're going to respond. Are they going to say, well, yes, we haven't raised that, but now we'd like to. And yes, the facts do support that. Do you know what they're going to do at that point? Do you have a clue or has there been any reason to think that they would take the position that they did in response to the district court's invitation to do so? You don't know. You're operating completely in the dark. And in this case, all of the indications before that point in time were that this was strictly, I see that my time is up. May I finish? Yes, please. All the indications before that point in time were that this was a strictly legal issue. The only fact in question was whether offense was or was not maintained. And we admitted it wasn't. The condition precedent argument that was raised was strictly one based on the content of the policy, as was the interpretive language. There was nothing raised at any point prior to that that would have even indicated to us that there was a factual issue that needed to be addressed. And so we briefed it as best we could on the information we had, firing in the dark, and that's where we left it. So I see that my time is up. I appreciate the panel's time. Thank you. Thank you. Good morning. May it please the court. My name is Peter Morgan. I'm here today representing the Apelli Praetorian Insurance Company. Counsel, when you denied coverage in this case, when your client denied coverage in this case, what was the basis, communicated basis, for the denial of coverage? The denial was based on two bases, Your Honor. The condition, the fence condition and the protective devices endorsement, also the exclusion. Those were both separately explained in the denial. The exclusion was, all right. At that time, did you raise material breach? Those words were not uttered in the denial. No. And would you agree with me that under the Colorado decision of Public Service Company of Colorado v. Wallace, that the principle under Colorado law is that insurers are limited to the grounds for denial of coverage that they raised in their initial letter denying coverage? I would respectfully disagree, Your Honor. All right. I want to know why you disagree, because I, as I read that case, it, the, it not only precluded you from relying on it, it precluded the U.S. District Court from relying on material breach, because you did not raise it. And as I read that case, the court and the company are precluded from, again, relying on a basis for denying coverage that was not asserted by the insurer in its letter to the insured denying cover, as a basis for denying coverage. So if I, I'm just giving you fair notice so you could disabuse me of my reading. Understood. Thank you, Your Honor. And I would respectfully disagree on two bases. First, the law in Colorado is that insurers do not waive bases of forfeiture that are not raised at the outset in their, in their denial letter. That case is State Farm v. McGowan. There's another older case, the name of which is escaping me. I believe it may be Hartford v. Livestock. I can supplement with that if the court is interested. You may, please. I will, Your Honor. Thank you. And the, the other basis that I would disagree on is that this, this issue of failure to satisfy the condition was raised clearly at the outset with the insured. We explained in no uncertain terms that they had not built the fence, that it was a requirement of the policy, both as a condition and an exclusion. And that same case that Your Honor is referring, Public Service Company v. Wallace, at least the Court of Appeals version of that case, puts the onus on the insured to satisfy a condition and to, and to demonstrate that they've satisfied the condition. To what, to what effect do you read the case, the Wallace? Let's refer to it for our purposes today as Wallace. To what effect do you read that case? I, Your Honor, candidly, I can't speak to the waiver portion of that case. I don't know that that case was addressed by appellant for that reason. I'm happy to also supplement with my reading of that case if the court would like. You, you may, but I mean, we're going to read it ourselves and. Okay. Is it your position that a tornado destroying the property would not give coverage because there was no fence? No, Your Honor. Right. What, what is your position as precisely as you can state it? Let me help frame out that hypothetical a bit. Assuming the facts are the same as this case, and so far as we've got this fence requirement as a scheduled protective device on the policy, and the loss, instead of being an arson and fire, is a tornado. In that case, I don't believe that the court would have ruled that the breach was material. The failure to build the fence was a material breach. The reason is that, the reason for that is you have to look at the factors that courts consider when determining whether or not a breach is material, and the loss that ultimately ensues is important in that consideration. So, one of the factors that courts consider is the extent to which the injured party will be deprived of the benefit it reasonably expected. In the tornado case, if the insurer is only scheduling a fence as a protective device, they're not bargaining for a construction project that's protected from tornado. That's different from our case. In our case, we did bargain, Praetorian did bargain for a construction project that was protected from arson, protected from trespassers sneaking onto the property in the middle of the night. And so, our case is different from the tornado case, in that we, Praetorian, I should say, is not getting the benefit of its bargain. The bargain being a construction project that's protected from exactly the type of loss that ensued. Is the question of fact whether the fence indeed would have stopped the arsonist? I don't believe so, your honor. No. I think, you know, there's a presumption that a fence would protect against arson, and the intent of the policy, which is up to the court, is really what matters there. And I think the intent is clear, and certainly we attached an affidavit in response to the trial court's request for a supplemental briefing on materiality that explained why the fence was material to the insurance company, and it was an important term, and in fact, why they went so far as to offer a 10% premium discount. Let me just ask you a couple of questions about the policy. First of all, this other conditions language, we're required to maintain a fence at all times, so forth. That's really unusual language as far as a Westlaw search would reveal anyway, and the cases, the small number of cases that are out there with something similar are much more emphatic, that this is a condition. If you don't have a fence, you don't have coverage, point one. And point two, I don't see any cases out there that use the terminology from a policy fire protective device or theft protective device. That seems unique to this policy. And nothing in the schedule says that a fence is either one of those things. Is there an ambiguity there? Is there a lack of definition that should compel a different result here? As to which section, your honor, the lack of a definition of fire protective device? Both. Number one, relatively, well, the more obscure protective device is not saying this is a condition and you lose, because there is language in other cases from other policies where it's more emphatic about that, where the person is described who the unsophisticated who reads the policy and tries to understand what's this mean would understand that language, whereas this language maybe not. And second, if you're going to use a term that hasn't ever been construed, so far as I know, the fire protective device as opposed to a plain old protective device or theft protective device, same thing, shouldn't you have to say in your protective devices schedule a fence is a fire protective device? If you're going to rely on that as apparel excluded? As to the first piece, your honor, on the condition, the case law in Colorado is replete with examples of courts relying on conditions to find no coverage where the condition itself doesn't say if you fail to satisfy this condition, you won't have coverage. A recent example is the stress con opinion out of the Colorado Supreme Court that was a no voluntary payments provision. There's off the top of my head, the Philadelphia versus craft case, which was a late notice case on a claims made policy. Another condition that the court was happy to enforce without any sort of language saying, oh, by the way, there won't be any coverage. So these conditions in my experience, your honor, often don't say, oh, and by the way, there won't be any coverage if you don't satisfy the condition. It's fundamental to insurance contract law that it's the insured's burden to satisfy that condition. And if they don't, the only realistic expectation that a reasonable insured would have is that it's going to affect their coverage. As to the second piece on the exclusion and whether or not fire protective should be should be defined in the policy, as your honor is well aware, the trial court didn't reach the exclusion in its order. That's the issue you briefed, right? That's the issue everybody was briefing, thought was the real issue. It was one of the issues we briefed. It was the primary issue, it looked to me like. But we also briefed condition. It was shorter just because it was an easier argument, but it's also what Judge Martinez did is he popped material breach on both of you. He did, your honor, the trial court. I don't want to beat a dead horse, but here's I was looking for the language for you so that you could deal with it. The language in Public Service Company of Colorado V. Wallace is as follows, quote, an insurer must raise or at least reserve all defenses to coverage within a reasonable time after learning of such defenses, period. When an insurer denies coverage on specific grounds, it waives the right later to assert additional defenses to coverage. Public Service Company of Colorado. What happened in this case is that Judge Martinez sua sponte raised material breach as a basis for denial of coverage without the insurer having complied with the requirements of Public Service Company of Colorado V. Wallace, which is to have asserted that grounds for denial of coverage, which you did not do. So both parties were prejudiced by the ruling of Judge Martinez. And I was raised, I was left with the question of, well, can the judge just pop up a defense without the insurance company having raised it? And that's why I asked a question of you that I did. Thank you, your honor. And if you want to address that question, and I would invite both parties to do so, we'll discuss it amongst ourselves at the bench here in a minute. But I would say let's get some briefing on it because certainly material to me is that it's a plain error issue, I think. Your honor, the first point I would make in response to your question is that there is a difference between not raising a basis for denial in any respect and our case, which is not raising, say, an element of the insured's burden in response to that basis for denial. Praetorian raised in very clear unequivocal terms the fact that the insured had failed to satisfy the condition in the policy. That's different than material breach, and material breach is a fact question. It's all about whether the parties could have anticipated that this conduct at the time they entered into the contract was a material breach. That's a fact question. And there was no discovery on this because you never asserted it, not as a grounds for denial of coverage. You never asserted it in your answer as an affirmative defense in this litigation. You never asserted in the summary judgment motion. There was no reason to do any of that. Whether the parties would have intended for this to be a material breach and understand that if they did not comply with this particular condition, that not only would the perils excluded fall into place, the entire policy is breached. That's a fact question about whether they intended that to be a material breach. You never asserted that. Judge Martinez inserted it into the litigation. Thank you, Your Honor. Under Rule 56F, the trial court is authorized to do exactly what it did. It can raise any issue that it chooses to raise, give the parties an opportunity to brief that issue and dispose of the case on that issue. But you haven't done discovery on it. You haven't asserted it as a basis for denial of coverage. It's nonsensical at that point. Rule 56 also provides a mechanism to deal with that issue, Your Honor. Under Rule 56D, the appellants could have requested time for briefing. The appellants were ordered to file a supplemental brief on an issue that the judge raised. They weren't given an opportunity. No one was to say, wait a minute, this isn't right. You were told to file supplemental briefs. I read the order. There wasn't a lot of leeway there. I understand, Your Honor. But respectfully, under Rule 56D, they have an opportunity. They can ask the court to give them time to perform that discovery. They can explain all these reasons that Your Honor is articulately explaining now. Or they could file a brief and do what they were told to do and then preserve the issue on appeal, essentially, when the judge does something otherwise. The trial court never asks the parties whether or not they want discovery. It's up to the party to raise the issue, right? Why would anybody be asking for discovery when you had never even asserted material breach, a fact question, as a defense? Judge Martinez raised it in the case. They were on notice. They knew. They knew that this issue was... On the issue of supplemental briefing, we'll discuss this at conference. And if we are to request additional briefing from you on the question that I've raised by the Wallace case, we'll issue an order for your benefit, both sides, to afford you an opportunity of post facto due process. Okay. Thank you, Your Honor. Thank you, counsel. You both argued the case very well. We appreciate the arguments. You're excused. The case is submitted.